In the Matter of HAL C. MOORE, Respondent, against JAMES R. MACDUFF, as Commissioner of Motor Vehicles of the State of New York, Appellant.

Third Department, March 24, 1954.

*Zweig & Meyl* for respondent.

*Nathaniel L. Goldstein, Attorney-General (Philip J. Fitzgerald* and *Wendell P. Brown* of counsel), for appellant.

HALPERN, J. The Commissioner of Motor Vehicles appeals from an order annulling his determination revoking the petitioner-respondent's license to operate a motor vehicle.

The petitioner was convicted on June 29, 1953, in the Province of Ontario of operating a motor vehicle on May 30, 1953 " while his ability to drive * * * [was] impaired by alcohol " in violation of subdivision (4a) of section 285 of the Criminal Code of Canada (as added by Can. Stat., 1951, ch. 47). Section 71 (subd. 2, par. [b]) of the New York **Vehicle and Traffic Law**

requires the revocation of an operator's license upon the holder's conviction outside the State of " an offense consisting of operating a motor vehicle or motor cycle while under the influence of intoxicating liquor ".

The court below held that the conviction under the Canadian statute did not authorize the revocation of the petitioner's license under subdivision 2 (par. [b]) of section 71, for the reason that the conviction was not technically for driving " while under the influence of intoxicating liquor " but was for driving " while his ability   *   *   *   [was] impaired by alcohol ". We cannot accept this reasoning. While the words in the two statutes are not identical, one whose ability to drive is " impaired by alcohol " is necessarily " under the influence " of alcohol.

The intent of the Legislature in adopting subdivision 2 (par. [b]) of section 71 was obviously to reach all persons who were convicted outside the State of an offense which was in substance that of operating a motor vehicle while under the influence of intoxicating liquor. The reach of the statute is not limited to cases in which the foreign statute uses the exact words used in the New York statute. If any other view were taken, it would be necessary for the Legislature, in order to accomplish its purpose, to list in the New York statute all the various forms of language in which the offense might be described in the statutes of other States of this country and in the statutes of foreign countries.

The Special Term Justice reasoned that the New York statute required a showing that the influence of the intoxicating liquor impaired the ability of the driver to " an appreciable degree ", whereas he thought that the Canadian statute would be satisfied by a showing of any impairment, even though it was not of an appreciable degree. The Special Term was undoubtedly correct in saying that the New York statute embraced only cases in which there was impairment to an appreciable degree but we have no doubt that the Canadian courts would construe their statute in the same way. Their law as well as ours deals only with effects which are perceptible or appreciable. In fact, in a lower court decision, this view has been expressly adopted as the proper construction of the Canadian statute (*Regina* v. *Marks,* [1952] Ontario Weekly Notes 608, 612; 15 C. R. 47; 103 C. C. C. 368). Construing subdivision (4a) of section 285, the court said " there must be tangible physical evidence of actual driving impairment in the form of one or more of the usual obvious indications of such impairment from alcohol or

drug influence ". The court accordingly quashed a conviction on the ground that the proof had failed to establish such impairment.

The petitioner's final argument is that the New York statute should not be construed as authorizing the revocation of the petitioner's license in this case because the offense of which he was convicted did not carry such consequences in the jurisdiction in which the offense was committed and, furthermore, would not in terms be sufficient to warrant a revocation if it had been committed in New York State. The petitioner points out that at the time of the commission of the offense here involved, a license could be suspended in Ontario only for a conviction under subdivision (4) of section 285 of the Canadian Criminal Code which applies only to a person who drives a motor vehicle " while intoxicated ". A conviction under subdivision (4a) of driving while one's ability to drive " is impaired by alcohol " was not at that time a sufficient basis for a suspension of a license, either under the Federal criminal code or under the Ontario Highway Traffic Act (see Canadian Criminal Code, § 285, subd. [7], and Ontario Highway Traffic Act, § 54). Suspension of a license for a violation of subdivision (4a) of section 285 has not yet been provided for in the Federal criminal code, although it is said to be " covered in the new criminal code to come out shortly " (1953 Supp. to O'Connor's Highway Traffic Act, p. 251). It may be noted that clause (c) of subdivision 1 of section 81 of the Highway Traffic Act of Ontario was amended by chapter 46 of the Laws of 1953, effective April 2, 1953, so as to authorize the suspension of a driver's license upon conviction under subdivision (4a) of section 285 of the Criminal Code but the whole of section 81 seems to relate only to the requirement of proof of financial responsibility.

In New York State, a license may be revoked on account of a conviction in this State of the crime of driving " while in an intoxicated condition " (Vehicle and Traffic Law, § 70, subd. 5; § 71, subd. 2, par. [b]). Proof of driving " while under the influence of intoxicating liquor " is not sufficient to establish the fact of driving " while intoxicated ". One may be under the influence of liquor and still not be intoxicated. (*Matter of Cashion* v. *Hartnett*, 234 App. Div. 332.) There is no equivalent offense in New York State for the Canadian offense of driving while one's " ability * * * is impaired by alcohol ", nor indeed is there any provision in the New York statute for a conviction in this State of the offense of driving " while under

the influence of intoxicating liquor ". Unquestionably, driving " while under the influence of intoxicating liquor " is not as serious an offense as driving " while intoxicated ".

At first blush, it may be difficult to understand why the Legislature made the less serious offense, if committed outside the State, the basis for a mandatory revocation of a license to operate in New York State, whereas it did not carry such a penalty if committed in New York State. An explanation of this apparent anomaly is to be found in the statutory history of section 71 of the Vehicle and Traffic Law. The second paragraph of section 71, as amended by chapter 26 of the Laws of 1930, provided that " such licenses must be revoked    *    *    *    where the holder is convicted    *    *    *    (b)    *    *    *    of driving a motor vehicle or motor cycle while intoxicated although the conviction was had outside this state ". The same standard was thus applicable to out-of-State convictions and to convictions within the State. However, it appeared in the case of *Matter of Cashion* v. *Hartnett* (234 App. Div. 332, *supra,* [1st dept., 1932]) that in the Commonwealth of Massachusetts, the relevant crime was defined as " operating a motor vehicle while under the influence of intoxicating liquor ". Apparently, no distinction was drawn in the Massachusetts law between driving " while under the influence of intoxicating liquor " and driving " while intoxicated " so that one who was actually intoxicated could be found guilty, in the terms of the Massachusetts statute, only of the offense of operating a motor vehicle " while under the influence of intoxicating liquor ". On the other hand, one who was not intoxicated but who was under the influence of intoxicating liquor could likewise be convicted of the offense under the Massachusetts statute (*Commonwealth* v. *Lyseth,* 250 Mass. 555). The Appellate Division held in the *Cashion* case that a Massachusetts conviction of driving " while under the influence of intoxicating liquor " was not a conviction for driving " while intoxicated " and that therefore the defendant's license to drive in New York State could not be revoked under the provision of section 71 as it then read. The court, in its opinion, suggested that it was for the Legislature to decide whether our statute should be amended to adopt the less exacting definition used in the Massachusetts statute.

In accordance with this suggestion, the Legislature in 1933 amended section 71 so as to provide in subdivision 2 (par. [b]) that any out-of-State conviction for driving " while under the influence of intoxicating liquor " would be a sufficient basis for

the revocation of a New York State driver's license (L. 1933, ch. 354). The statute was specifically designed to overcome the effect of the *Cashion* decision. The Legislature apparently decided that the only effective way in which to deal with the situation was to adopt a formula for out-of-State convictions less exacting than the standard for New York convictions.

It is true that the dragnet thus flung by the Legislature may catch persons whose conduct is not as serious as "driving * * * while intoxicated" but there can be no doubt about the Legislature's power to adopt this method of dealing with the problem. The Legislature apparently felt that it would be better to run the risk of occasionally revoking the licenses of persons who had been guilty only of the lesser offense of driving under the influence of liquor than to allow persons who had been actually guilty of the more serious offense of driving while intoxicated to escape revocation of their licenses upon the ground that the out-of-State statute was cast in the less exacting terms of driving while under the influence of intoxicating liquor (*Matter of Howard* v. *Fletcher*, 199 Misc. 521, affd. 278 App. Div. 799).

Where the offense occurred in a jurisdiction in which the two crimes were separately defined and a suspension or revocation of license was imposed as punishment only for the more serious offense, the inequity may seem more marked but this too must be deemed to be within the reach of the Legislature's determination. The Legislature did not limit the out-of-State formula mandating a revocation upon conviction of driving " while under the influence of intoxicating liquor ", to those jurisdictions in which that was the only crime defined by the law in dealing with the combination of driving and the drinking of liquor. Neither did the Legislature limit the application of the formula to convictions in jurisdictions in which the offense of driving while under the influence of intoxicating liquor carried with it the penalty of suspension or revocation. The Legislature could have made these distinctions and imposed these limitations but it chose not to do so. It is not within our power to engraft them upon the statute (*Matter of Howard* v. *Fletcher, supra*).

It is interesting to observe that, in the Province of Quebec, a license may be suspended either for driving while " in a state of drunkenness " or "under the influence of intoxicating liquors " (Quebec Motor Vehicles Act, § 77, as added by Que. Stat., 1949, ch. 46). The Canadian Criminal Code is nationwide in application but each province is free to adopt its own motor

vehicle regulations (*Provincial Secretary of Prince Edward Island* v. *Egan,* [1941] S. C. R. 396, 76 C. C. C. 227, [1941] 3 D. L. R. 305). The question has arisen under the Quebec statute whether a conviction under subdivision (4a) of section 285 of the Criminal Code of driving while one's ability to drive is " impaired by alcohol " is sufficient to authorize the court to suspend the driver's license upon the ground that he was driving " under the influence of intoxicating liquors " within the meaning of section 77 of the Motor Vehicles Act. It will be noted that the Quebec motor vehicle statute uses substantially the same language as subdivision 2 (par. [b]) of section 71 of the New York Vehicle and Traffic Law. The Quebec courts have held in the two cases in which the question has arisen that a conviction of driving " while his ability * * * [was] impaired by alcohol " in violation of subdivision (4a) of section 285 of the Criminal Code establishes that the defendant was driving " under the influence of intoxicating liquors " within the meaning of section 77 of the Quebec Motor Vehicles Act and that the magistrate is under a duty in such a case to suspend the defendant's license (*Rex* v. *Jacquin,* [1951] Que. S. C. 459; 1951 Canadian Abridgement 497; *Marcotte* v. *Fortin,* [1952] Que. S. C. 449; 1952 Canadian Abridgement 548; affd. *sub nom. Marcotte* v. *Regina,* [1953] Que. Q. B. 333).

We are somewhat troubled by the fact that subdivision (4a) of section 285 of the Canadian Criminal Code couples driving while ability is impaired " by alcohol " with driving while ability is impaired by " any drug ". A conviction under that statute, without further explanation, might be held to come within the principle of *People* v. *Olah* (300 N. Y. 96), and it might be held that the driver's license could not be revoked under subdivision 2 (par. [b]) of section 71 because the New York statute requires that the conviction be of driving while under the influence of " intoxicating liquor ", whereas a conviction under the Canadian statute might possibly be for driving while under the influence of a drug (cf. *Matter of Alpert* v. *Macduff,* 204 Misc. 326). However, we do not believe that the *Olah* doctrine, or any corollary to it, as developed in criminal law, should be applied to this type of regulatory statute. Recourse may be permitted to the information or other record evidence to establish that the offense of which the defendant was convicted was that of driving while under the influence of alcohol, even though the crime defined by the statute covered the use both of alcohol and of drugs. In any event, the question is not presented by this

record, since the petition itself alleges that the petitioner had been convicted in Ontario of " the offence of operating a motor vehicle while ability impaired by alcohol ".

The order of the Special Term should be reversed and the determination by the Commissioner of Motor Vehicles confirmed, with $50 costs.

FOSTER, P. J., BERGAN, COON and IMRIE, JJ., concur.

Order reversed, and the determination of the Commissioner of Motor Vehicles confirmed, with $50 costs.