In the Matter of HAL C. MOORE, Appellant, against JAMES R. MACDUFF, as Commissioner of Motor Vehicles of the State of New York, Respondent.

Argued March 10, 1955; decided June 10, 1955.

*George N. Meyl* and *Morris J. Zweig* for appellant. I. The action of the commissioner was without statutory authority and therefore void. (*Regina* v. *Marks,* O. W. N. [1952], No. 31; *Matter of Goodwin* v. *Mealey,* 173 Misc. 169; *Matter of Cashion* v. *Harnett,* 234 App. Div. 332; *People* v. *Pardee,* 202 Misc. 238; *People* v. *Olah,* 300 N. Y. 96; *Logan* v. *United States,* 144 U. S. 263; *People* v. *Gutterson,* 244 N. Y. 243; *People* v. *De Renna,* 166 Misc. 582; *Matter of Howard* v. *Fletcher,* 199 Misc. 521, 278 App. Div. 799; *Regina* v. *Jacquin,* [1951] Que. S. C. 459; *Marcotte* v. *Fortin,* [1952] Que. S. C. 449.) II. Section 71 (subd. 2, par. [b]) applies only to convictions in other States of the United States, and not to those in foreign countries. (*Matter of Wignall* v. *Fletcher,* 303 N. Y. 435; *Regina* v. *McLean,* 107 C. C. C. 32; *People ex rel. Beaman* v. *Feitner,* 168 N. Y. 360.)

*Jacob J. Javits, Attorney-General (Philip J. Fitzgerald* and *Henry S. Manley* of counsel), for respondent. I. The action of the commissioner was valid and in accordance with the statutory mandate. (*Matter of Cashion* v. *Harnett,* 234 App. Div. 332; *Matter of Howard* v. *Fletcher,* 199 Misc. 521, 278 App. Div. 799; *Ballard* v. *State,* 25 Ala. App. 457; *People* v. *Dingle,* 56 Cal. App. 445; *Hart* v. *State,* 26 Ga. App. 64; *Wallace* v. *State,* 44 Ga. App. 571; *Klaser* v. *State,* 89 Ind. App. 561; *State* v. *Noble,* 119 Ore. 674; *Com.* v. *Buoy,* 128 Pa. Super. Ct. 264; *Com.* v. *Long,* 131 Pa. Super. Ct. 28; *State* v. *Hurd,* 5 Wn. 2d 308; *Danielson* v. *State,* 155 Neb. 890.) II. The statute applies to convictions had outside the State. (*Arc Eng. Corp.* v. *State of New York,* 293 N. Y. 819, 294 N. Y. 656; *Lindlots Realty Corp.* v. *County of Suffolk,* 278 N. Y. 45; *Colello* v. *Stevenson & Co.,* 284 App. Div. 805; *Maryland Cas. Co.* v. *Brown,* 131 Tex. 404.)

Conway, Ch. J. We have presented to us a question relating to a Canadian regulation of motor vehicles in a proceeding in which petitioner asserts that while *parked* in the city of Toronto, Canada, he was arrested and charged with *operating* a motor vehicle while his ability to drive was impaired by alcohol.

The Ontario Highway Traffic Act, as amended in 1953, adopted section 285 of the Criminal Code (Canada). Subdivision (4) of section 285 of the Canadian Criminal Code reads as follows: " Every one who, while *intoxicated,* or under the influence of *any narcotic,* drives any motor vehicle or automobile, or has the care or control of a motor vehicle or automobile, *whether it is in motion or not,* shall be guilty of an offense ". (Emphasis supplied.)

That section is followed by subdivision (4a), reading as follows: " Everyone who, while his *ability to drive* a motor vehicle or automobile *is impaired* by alcohol or *any drug,* drives any motor vehicle or automobile, or has the care or control of a motor vehicle or automobile, *whether it is in motion or not,* is guilty of an offense ". (Emphasis supplied.)

Clearly there is a distinction and difference between the acts proscribed by these two subdivisions of section 285. To determine to the contrary would be to ascribe to the legislature of a province of a neighbor country, the doing of a vain and useless act.

Now we turn to our own Vehicle and Traffic Law (§ 71, subd. 2, par. [b]) which provides as follows:

§ 71. * * *

" 2. Mandatory suspensions and revocations. Such licenses must be revoked and such certificates of registration may also be revoked where the holder is convicted. * * *

" (b) of * * * an offense consisting of operating a motor vehicle or motor cycle while *under the influence* of intoxicating liquor where the conviction was had outside this state;" (emphasis supplied).

The sole competent evidence upon which the respondent Commissioner of Motor Vehicles of our State acted was the certificate of conviction reproduced below:

| Offence | | Place | Toronto |
|---|---|---|---|
| Ability Imp. | | | |

| Act | | | |
|---|---|---|---|
| Violated | C C | Sec. 285–4A | |

| Date of conviction | Fine | Costs | Imprisoned |
|---|---|---|---|
| June 29/53 | 100. | | or 15 days |

The petitioner pleaded guilty to a violation of subdivision (4a) of section 285 on June 29, 1953. On August 19th he was notified by the commissioner that pursuant to section 71 (subd. 2, par. [b]) of the Vehicle and Traffic Law his license to drive was revoked. That was without a hearing and is deemed " an administrative act reviewable by the supreme court as such " (Vehicle and Traffic Law, § 71, subd. 6).

The situation presented is important for a number of reasons: (1) The possession of a license to drive is a vested property right. As we said in *Matter of Wignall* v. *Fletcher* (303 N. Y. 435, 441, FROESSEL, J.): " We are here dealing with the exercise of power by the commissioner in the revocation of a driver's license, and our decision will apply not only to this petitioner, but may affect any holder of a driver's license in the State of New York. A license to operate an automobile is of tremendous

value to the individual and may not be taken away except by due process.'' (2) The petitioner alleges that he is a salesman and travels to outlying areas and towns, as well as large cities in various States and Canada and must carry a large number of samples; that train facilities are not available in some of the places he must periodically visit; that he has become subject to the loss of his employment of twenty-seven years with one company which depends solely upon the transportation facilities of an automobile. (3) Many of our residents motor into the province of Ontario as well as Quebec and section 335-a of the Code of Criminal Procedure does not apply to a situation such as this (in spite of the express provision for such application in the Vehicle and Traffic Law, § 71, subd. 6) since by its terms section 335-a is limited to an '' arrest in this state of a resident of this state ''. (4) Action is taken by the commissioner without opportunity to be heard.

Section 335-a of the Code of Criminal Procedure indicates the extent to which our Legislature has gone to protect the right to operate an automobile. It provides that prior to accepting a plea of guilt the court must instruct the defendant at the time of his arraignment in substance as follows: '' A plea of guilty to this charge is equivalent to a conviction after trial. If you are convicted, not only will you be liable to a penalty, but in addition your license to drive a motor vehicle or motor cycle, and your certificate of registration, if any, are subject to suspension and revocation as prescribed by law.''

As one court pointed out in *Matter of McCord* v. *Fletcher* (182 Misc. 447, 449): '' Prior to the enactment of section 335-a of the Code of Criminal Procedure, frequent instances of mistakes and injustice occurred when violators of subdivision 5 of section 70 of the Vehicle and Traffic Law were lulled into believing that upon pleading guilty to operating a motor vehicle while under the influence of intoxicating beverage, the imposition of a small fine would be the sole penalty of such offense. Many such violators were rudely awakened from such belief when later informed that no longer might they operate upon the public highways their motor vehicle within the State of New York. To remedy such evil, section 335-a of the Code of Criminal Procedure was enacted and now a magistrate is compelled to inform the accused definitely, before accepting a plea of

guilty, of all the consequences which may or will follow conviction, and, further, the magistrate must inform the accused that a plea of guilty is equivalent to a conviction after trial."

The certificate of conviction, which we quoted above, when considered in connection with the disjunctive wording used in subdivision (4a) indicates clearly that petitioner could have been convicted under the Ontario statute on grounds other than the ones set forth in section 71 (subd. 2, par. [b]) of the Vehicle and Traffic Law. Thus he might have been convicted of:

(1) " * * * ability to drive * * * impaired by alcohol * * * [and] drives a motor vehicle * * * "

(2) " * * * ability to drive * * * impaired by alcohol * * * [and] has the care or control of a motor vehicle in motion * * * "

(3) " * * * ability to drive * * * impaired by alcohol * * * [and] has the care or control of a motor vehicle [not] in motion * * * "

(4) " * * * ability to drive * * * impaired by * * * any drug * * * [and] drives a motor vehicle * * * "

(5) " * * * ability to drive * * * impaired by * * * any drug * * * [and] has the care or control of a motor vehicle in motion * * * "

(6) " * * * ability to drive * * * impaired by * * * any drug * * * [and] has the care and control of a motor vehicle [not] in motion * * * "

The portion of the Vehicle and Traffic Law (§ 71, subd. 2, par. [b]) involved provides that a license must be suspended and revoked when the holder has been convicted of " operating a motor vehicle * * * while under the influence of intoxicating liquor where the conviction was had outside this state ". Upon the competent evidence which was before the respondent, it was impossible to determine whether the petitioner did or did not come within the scope of the appropriate section of the New York law, and therefore the respondent was incorrect in revoking the license of the petitioner. It is true that one of the respondent commissioner's exhibits is a letter from the Ontario Motor Vehicles Branch of the Department of Highways which characterized the conviction of the petitioner as one of " operating a motor vehicle while ability impaired by alcohol." It is also true that the opening sentence of the dissenting opinion

is as follows: "In June, 1953, appellant, a resident of New York State, pleaded guilty, as he himself alleges in his petition in this proceeding, in an Ontario Court, while represented by counsel, to 'the offense of operating a motor vehicle while ability impaired by alcohol' (Ontario Highway Traffic Act; Canadian Criminal Code, § 285, subd. [4a])." The same quotation is referred to on page 45 of the dissenting opinion. We do not read the quoted portion, which has been taken from paragraph 11 of the petition herein, as do the dissenters and it is better, we think, that the entire paragraph be quoted. It reads as follows: "11. That one evening while petitioner was *parked* in the City of Toronto, Canada, he was arrested and *charged* and thereafter pleaded to a *charge* of the offense of operating a motor vehicle while ability impaired by alcohol; that petitioner was unfamiliar with the laws of Canada and was not informed that his operator's license would be revoked in the State of New York. Were it not for the fact that petitioner was a stranger in a foreign country, he would not have pleaded to this charge or any charge." (Emphasis supplied.)

The preceding paragraph 10 might also be quoted and is as follows: "10. That petitioner was not convicted in Toronto, Canada, or elsewhere for operating a motor vehicle while under the influence of intoxicating liquor."

We think that the record does not disclose that the petitioner was represented by counsel in Ontario, Canada. As we shall point out later, the only evidence presented to the commissioner upon which he could legally act was the certificate of conviction reproduced in part (*supra*). That showed no representation by counsel. Paragraph "11" of the petition (quoted *supra*) is sufficient in itself to show lack of representation of the petitioner by counsel, if we were to consider evidence which was not before the commissioner when he acted. The commissioner in paragraph "TENTH" of his separate and distinct defense to the petition certified and annexed thereto "a transcript of record of proceedings herein." The four papers so certified and annexed do not show any representation by counsel for petitioner, and since those were the only papers before the commissioner, by his own verified answer, they are conclusive. The claim by the commissioner which is adopted by the dissenting opinion is that because the commissioner alleged on infor-

mation and belief that the "petitioner was represented by counsel at said Magistrate's Court" in paragraph "FIFTH" of his separate and distinct defense, and petitioner failed to deny that allegation, it must be considered to be admitted. On this record we do not think that the commissioner is justified in his claim. Suffice it to say that no paper in this record indicates that petitioner had legal counsel in Ontario, nor does any paper disclose the name of any counsel.

To ascertain of what charge a person has been convicted we do not have resort to extrinsic documents which would have no force or effect upon the certificate of conviction itself. A voluntary characterization could have no more effect here than the act that "Olah pleaded guilty to an indictment which recited that the items stolen were worth over $200" (*People* v. *Olah,* 300 N. Y. 96, 98). We must refer to the indictment and the statute under which the indictment was drawn to determine what the operative and material facts were (*People* v. *Love,* 305 N. Y. 722), and then we must compare these operative and material facts to our own statute to ascertain whether or not it has application. Therefore the characterizations by the respondent and the petitioner must be ignored in the present case, not only for the same reason as in the *Olah* case, but also for the conclusive reason that such characterizations by the petitioner and respondent were not a basis upon which the respondent acted, and the courts may only consider such evidence as was presented to the commissioner (*Matter of Newbrand* v. *City of Yonkers,* 285 N. Y. 164, 177; see, also, *Matter of Ogden* v. *Du Mond,* 273 App. Div. 582, 583–584). We are limited in our present case to referring to the Ontario statute alone (there was no indictment and the conviction was for a violation of the section) and to ascertaining the operative and material facts. Upon doing so we are faced with the different possibilities set forth (*supra*). It can immediately be ascertained that items 4, 5 and 6 cannot come within section 71 (subd. 2, par. [b]) of the Vehicle and Traffic Law, for those items provide for a factual situation where the defendant is under the influence of drugs. Our section makes no mention of drugs, and refers only to intoxicating liquor. This alone is a sufficient ground to find that the petitioner is entitled to retain his license on this record (*People* v. *Olah,* 300 N. Y. 96, *supra*).

The case before us is analogous to that of *People* v. *Love*

(*supra*) in that the offense of which the petitioner was convicted under the Ontario statute is uncertain, with the single exception that in the *Love* case we were able to resolve the apparent uncertainty of the precise criminal act by closely examining the *indictment* in relation to the statute. There is no indictment here upon which we can rely, and so the offense to which the petitioner pleaded remains doubtful and undetermined. Therefore it is clear that the respondent failed to meet the burden, which was his, to present proof in some admissible form which did not leave uncertain the precise offense of which the petitioner was convicted in Ontario. In the circumstances before us where the petitioner's conviction was for a violation of subdivision (4a), the certificate of conviction failed to specify which of the different possible offenses was the one of which he was convicted and only one of which might have come within the scope of section 71 (subd. 2, par. [b]) of the Vehicle and Traffic Law. In view of this uncertainty, which clearly exists, this case comes within the rule which requires a court to give to the record " ' that construction which operates in favor of life or liberty ' " (*People ex rel. Carollo* v. *Brophy,* 294 N. Y. 540, 545).

One word more need be said. As the Appellate Division properly pointed out: " The Canadian Criminal Code is nation-wide in application but each province is free to adopt its own motor vehicle regulations (*Provincial Secretary of Prince Edward Island* v. *Eagan* [1941] S. C. R. 396, 76 C. C. C. 227 [1941] 3 D. L. R. 305)." Not only is each province free to make its own motor vehicle regulations, but the regulations are to be construed by us as they are construed by the courts of the particular province in which they are enacted. Thus the Attorney-General cites a number of cases decided in Quebec affecting a regulation similar to the one under consideration here. They are not applicable here for the courts of the particular province are the proper tribunals to decide the intent of their own legislature (cf. *Allard* v. *Charbonneau,* 1953 O. W. N. 381). The only case called to our attention in the courts in Ontario is a County Court case in which there was a dismissal of the charge. In that case (*Regina* v. *Marks* [1952] O. W. N. 608, 612, 15 C. R. 47, 103 C. C. C. 368, 375) in discussing subdivision (4a) the court said: " It fails to provide for definite tests or indications of driving impairment as the direct result of alcohol or drugs.

It means that any decent citizen partaking of a glass of beer or wine with his luncheon, be he parliamentarian, professional man, clergyman, labourer, business executive, Judge or otherwise could, on stepping into his motor car, be apprehended by a police officer and subjected to all the usual indignities of examination, arrest and trial, all because there was a whiff of alcohol on his breath. * * * Even if the word ' visibly ' were used immediately before the word ' impaired ' the danger would be minimized and positive proof of actual impairment would be necessary. In my view there must be tangible physical evidence of actual driving impairment in the form of one or more of the usual obvious indications of such impairment from alcoholic or drug influence.''

This construction of subdivision (4a) by the Ontario court indicates quite clearly the contrast between subdivision (4a) and our own Vehicle and Traffic Law (§ 71, subd. 2, par. [b]).

We do not think that in determining whether or not petitioner should have his license revoked that there should be weighed in the scales of justice the number of licensed motor vehicles, the number of licensed drivers and the number of highway accidents in this State. Those matters are neither germane nor relevant under our system of administering justice under law. Petitioner had no accident in Ontario and he alleged under oath that he never had been convicted of driving a motor vehicle while intoxicated in Ontario, Canada, or anywhere else. There was no showing here that during his twenty-seven years as a salesman that he had ever had an accident. Cases must be decided upon the record presented.

The order of the Appellate Division should be reversed and that of Special Term reinstated, with costs in this court and in the Appellate Division.

DESMOND, J. (dissenting). In June, 1953, appellant, a resident of New York State, pleaded guilty, as he himself alleges in his petition in this proceeding, in an Ontario court, while represented by counsel, to '' the offense of operating a motor vehicle while ability impaired by alcohol '' (Ontario Highway Traffic Act; Canadian Criminal Code, § 285, subd. [4a]). A fine was imposed upon him by the Ontario court (with the alternative of fifteen days' imprisonment) and he paid the fine.

The Motor Vehicle Branch of the Ontario Department of Highways sent to respondent, the New York State Commissioner of Motor Vehicles, official notice of appellant's conviction in Ontario. Respondent thereupon revoked appellant's New York State automobile operator's license. Such revocation was mandated, absolutely and beyond control of any public officer or court in this State, by paragraph (b) of subdivision 2 of section 71 of the New York State Vehicle and Traffic Law, as amended in 1943, which reads:

" 2. Mandatory suspensions and revocations. Such licenses must be revoked * * * where the holder is convicted. * * *

" (b) of * * * an offense consisting of operating a motor vehicle * * * while under the influence of intoxicating liquor where the conviction was had outside this state ".

Appellant then brought this article 78 of the Civil Practice Act proceeding to set aside the revocation. The sole ground set forth in his petition for such relief (and in his brief to this court on this appeal) is a supposed difference in meaning between " impaired by alcohol " (Canadian statute, *supra*) and " under the influence of intoxicating liquor " (New York statute, *supra*). There is no such difference. They mean exactly the same thing.

This court, on quite a different ground, is nullifying the revocation. Citing *People* v. *Olah* (300 N. Y. 96), this court theorizes that appellant's Ontario conviction might have been for one of the causes mentioned in the Ontario statute (*supra*) other than driving a motor vehicle while the driver's ability to drive was impaired by alcohol. But the problem is not one of statutory exegesis. However many different offenses are proscribed by the Ontario law, we know the exact offense to which appellant pleaded guilty and of which he was convicted. He not only admits, but alleges to the New York courts in this very proceeding, that his guilty plea and conviction was for " the offense of operating a motor vehicle while ability impaired by alcohol ". The *Olah* holding (*supra*) has nothing whatever to do with it, since the Ontario charge and the Ontario operative fact were the same, and single and undivided. Appellant just simply confessed to, and was punished for, driving an automobile in Ontario while his ability to drive was impaired by alcohol.

New York State has 4,500,000 licensed motor vehicles, 6,000,-000 licensed drivers, and has 350,000 highway accidents a year. Public safety requires, at the least, that our mandatory statutes (few and insufficient as they are) be enforced.

The order should be affirmed, with costs.

FROESSEL, VAN VOORHIS and BURKE, JJ., concur with CONWAY, Ch. J.; DESMOND, J., dissents in an opinion in which DYE and FULD, JJ., concur.

Order reversed, etc.